IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

EDDIE GENE EVANS,

                           Petitioner,

      v.                                   REPORT AND RECOMMENDATION

MICHAEL THURMER, Warden,                      08-cv-0360-slc
Waupun Correctional Institution,

                           Respondent.

---

       Before me for report and recommendation is the petition for a writ of habeas corpus filed by Eddie Gene Evans, an inmate at the Waupun Correctional Institution. Evans, who was convicted in May 2004 on one count of armed robbery with threat of force, contends that his no contest plea to the charge was not entered knowingly and intelligently because his lawyer provided misinformation and bad advice to petitioner about the terms and consequences of the plea and because he suffers from vision and hearing deficits that prevented him from fully understanding the plea proceedings. I am recommending that this court deny the petition because petitioner has not shown that the Wisconsin Court of Appeals applied clearly established federal law in an unreasonable manner or made any unreasonable determinations of fact when it rejected petitioner's claims and affirmed his conviction.

       The following facts are drawn from the state court record:

FACTS

       At about 3 p.m. on April 30, 2003, Anna McKittricks was vacuuming the front passenger seat of her car at a carwash on East Washington Avenue in Madison, Wisconsin, when she heard the driver's side door open. She looked up from her kneeling position in the front passenger seat to see a man in a stocking cap pointing a silver, black-handled gun at her face. After demanding

and obtaining $2.50 in change in a ziplock bag from McKittricks, the gunman sped away in McKittricks's car; McKittricks called 911 immediately.   About 30-45 minutes later, police responding to a report of a crash involving McKittricks's car discovered petitioner in the vehicle. Petitioner was taken to the hospital.   Police brought McKittricks to the scene, where she identified her bag of coins as well as the gun used and cap worn by her assailant.

On May 1, 2003, petitioner was charged in the Circuit Court for Dane County with armed robbery by threat of force, operating a motor vehicle without the owner's consent and first degree recklessly endangering safety.   Petitioner was taken into custody and placed in the Dane County jail.   Earlier in 2003, petitioner had been released on parole in Louisiana after having served 18 years of a 35-year sentence for armed robbery and aggravated battery.   On or about June 30, 2003, Louisiana asked Wisconsin to detain Evans pending a hearing on whether his parole should be revoked.   After a hearing, Wisconsin found probable cause that petitioner had violated parole.

On May 27, 2004, before he was returned to Louisiana, petitioner entered a plea of no contest to one count of armed robbery by threat of force in the Dane County court case.   At the plea hearing, the prosecutor stated that the parties had reached a plea agreement:

> The plea will be to Count 1, Case Number 03 CF 1002.  Both sides are going to agree to recommend to you on that plea to armed robbery that you sentence the defendant to 20 years.  We're both going to recommend to you that you divide that 20 years between seven years of incarceration and 13 years of extended supervision.
>
> The state will move to dismiss, but read in for purposes of agreeing with the sentencing, Counts 2 and 3.

2

> The state also moves to dismiss, but read in for purposes of sentencing, 04 CF 1046 and 03 CM 1324.

Tr. of Sentencing Hearing, May 27, 2004, dkt. #13, exh. 15, at 2-3.

The prosecutor added that "[t]o the best of our understanding from the state of . . . Louisiana right now," petitioner would be returned to Louisiana after completion of his Wisconsin sentence, where he would serve "eight more years or some portion less than that" on his Louisiana armed robbery sentence. *Id*. at 3-4. Petitioner's defense lawyer, John Fiske, stated that he agreed with the prosecutor's statements.

The court then addressed petitioner. It asked whether petitioner understood what was being proposed, to which petitioner responded, "Yes, sir." The following colloquy then took place:

THE COURT:   The recommendation is that you be sentenced to a prison term of 20 years in prison on Count 1 in File 03 CF 1002. Your initial period of confinement would be seven years. Your period of extended supervision would be 13 years. Do you understand that?

DEFENDANT: Yes.

THE COURT:   And the initial period of confinement means you would not be released sooner than the seven years. Do you understand that? Do you understand that, sir?

DEFENDANT: Yes, sir.

*Id*. at 4.

After outlining the elements of the charge, the court confirmed that petitioner had submitted a Plea Questionnaire and Waiver of Rights form and that he had gone over the form with his lawyer before signing it. The court reviewed each of the rights that petitioner was giving up by pleading no contest and petitioner stated that he understood each right. Throughout the

3

colloquy, petitioner indicated that he understood what the court was telling him; when the court asked him if he had any questions, petitioner said, "No, sir." When the court asked petitioner what plea he wished to enter, petitioner replied, "No contest." The court stated that it was accepting petitioner's plea and finding that he had made it freely and voluntarily. The court added the following off-script observation:

> It is obvious that Mr. Evans understands what he is doing, that he was worked with his lawyer on this case. He's articulate. He's completed 15 years of school. He has some familiarity, apparently, with the Criminal Justice System.

*Id*. at 9.

The court stated that petitioner's sentence was 20 years in the Wisconsin State Prison System, to consist of seven years' initial confinement followed by 13 years' extended supervision. *Id*. at 10. At no time did petitioner indicate that he was having trouble hearing, seeing or understanding the proceedings, nor did he ask any questions about the plea agreement or his sentence.

On August 11, 2005, petitioner submitted a *pro se* motion for post-conviction relief. Petitioner asked for permission to withdraw his plea on the ground that he had entered it in reliance on misrepresentations and omissions by Fiske. Petitioner alleged that Fiske had told him that he would serve a *total* sentence of seven years under the plea agreement; told him that he had 13 years to serve on his Louisiana sentence, and that if petitioner entered a plea to the Wisconsin armed robbery charge, his Louisiana sentence would run concurrently with his Wisconsin sentence; and that Fiske had been ineffective for failing to object to the trial court's failure during the plea proceedings to determine whether petitioner could adequately hear and

4

see the proceedings, given that Fiske had documents in his possession that indicated that petitioner could not see without his bifocal glasses and could not hear without a hearing aid.

In addition, petitioner summarily alleged that Fiske had been ineffective for failing to object to the trial court's failure to ascertain whether a factual basis existed for the plea and failing to advise petitioner that the court was not bound by the terms of the parties' plea agreement; threatening to withdraw from the case if petitioner did not enter a plea to the armed robbery; failing to ensure that certain offenses for which petitioner was charged on April 1, 2003 were dismissed pursuant to the plea agreement; failing to challenge the victim's in-court identification of petitioner; failing to "re-urge an invalid competency evaluation;" and "leaving numerous pro se motions open on file." Mot. Withdraw Guilty Plea, dkt. 13, exh. 3.

The court convened a hearing on the motion on December 2, 2005 and March 8, 2006. Fiske testified that he had told petitioner that he was not licensed in Louisiana and did not know how any Wisconsin sentence that petitioner would receive would affect his Louisiana sentence. He testified, however, that during plea negotiations, he had focused on the pending Louisiana sentence as a reason why the prosecutor should agree to less time on the Wisconsin charges. Fiske testified that petitioner had heard the plea offers that Fiske had conveyed to him and had not said that he was unable to hear the court proceedings or see the plea questionnaire form. Fiske indicated that the only reasonable defense to the charge was not guilty by reason of insanity, a defense that had been rejected by a medical expert.

The trial court denied the motion. Ruling from the bench, the court found that petitioner's version of events was not credible and that there was "no reasonable way" petitioner could have misunderstood the totality of the sentence, including the extended supervision time.

5

The court noted that many of the other items raised in the motion had not been addressed at the hearing, but that the record was now closed.

On February 29, 2008, the Wisconsin Court of Appeals issued an order affirming summarily the trial court's decision. *State v. Evans*, 2006AP618-CR (Ct. App. Feb. 29, 2008) (unpublished decision), attached to Response to Pet., dkt. #13, exh. 9. The court found that the record from the plea hearing refuted "unequivocally" Evans's claim that he was informed that he would be sentenced to no more than a total of seven years. *Id*., at 2. It noted that the prosecutor and the court both stated that the plea agreement called for a prison term of 20 years, consisting of seven years' initial confinement followed by 13 years' extended supervision, and that petitioner "had ample opportunity to raise any concerns he had at that time." *Id*., at 3. As for petitioner's alleged hearing and vision problems, the court found that petitioner had not adequately explained how they had affected his ability to hear and understand the proceedings. *Id*. The court observed that the trial court had raised no concerns in this regard, and had even made the "somewhat unusual observation" at the plea hearing that it was "obvious" that petitioner understood what he was doing and had worked with his lawyer on his case. *Id*.

The court rejected petitioner's argument that his lawyer should have argued at the plea hearing that there was no factual basis for the plea, finding that the complaint provided an adequate factual basis. *Id*. It also rejected petitioner's contention that Fiske had misrepresented that petitioner would serve the time remaining on his Louisiana sentence concurrently with his Wisconsin sentence, deferring to the trial court's finding that petitioner's version of events was not credible. *Id*. Finally, the court noted that although petitioner had raised other claims, it was

not addressing them because "they are inconsequential and not fully developed." *Id*. at 4 (citing *County of Fond du Lac v. Derksen*, 2002 WI Ap 160, ¶ 4, 256 Wis. 2d 490, 647 N.W. 2d 922).

After unsuccessfully petitioning the Wisconsin Supreme Court for review, petitioner filed the instant habeas petition, reasserting the same claims he raised in the state courts.

ANALYSIS

A.  Procedural Default

Before he is entitled to a federal ruling on his claims, a petitioner must (1) exhaust all remedies available in the state courts; and (2) fairly present any federal claims in state court first. *Lemons v. O'Sullivan*, 54 F.3d 357 (7th Cir. 1995).  A petitioner has exhausted his state court remedies where he has "no further available means for pursuing a review of one's conviction in state court." *Wallace v. Duckworth*, 778 F.2d 1215, 1219 (7th Cir. 1985).  The state appears to concede that petitioner has exhausted his state court remedies for purposes of federal habeas review.

However, exhaustion entails more than merely shepherding one's claims through the appropriate paths of state court review; in addition, the petitioner must present his federal claims fully and fairly to the state courts along the way.  *Chambers v. McCaughtry*, 264 F.3d 732, 737 (7th Cir. 2001)*; see also O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("[T]he exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts.").  That is, "[a] petitioner must provide the state courts with a fair opportunity to apply constitutional principles and correct any constitutional error committed by the trial court." *Bocian v. Godinez*, 101 F.3d

7

465, 469 (7th Cir. 1996) (quotation omitted).  In order to meet the "fair presentment" precondition to exhaustion, "[t]he petitioner must have placed both the operative facts and the controlling legal principles before the state courts." *Chambers,* 264 F.3d at 737-38 (internal citations omitted).  A petitioner's failure to fairly present his federal claims to the state courts is a procedural default that bars this court from considering the merits of the claims.  *Id.*

A petitioner may also procedurally default a federal claim by failing to meet a *state* procedural requirement.  *Moore v. Bryant*, 295 F.3d 771, 774 (7th Cir. 2002).  "A federal court will not review a question of federal law decided by a state court if the decision of the state court rests on a state procedural ground that is independent of the federal question and adequate to support the judgment."  *Id.* (citations omitted).  In assessing whether a state court ruling rests upon an "independent and adequate" determination of state law, the federal court must refer to the decision of the last state court to have ruled on the merits.  *Page v. Frank*, 343 F.3d 901, 905 (7th Cir. 2003).  A state ground is deemed "independent" for this purpose "only if the state court actually relied on a state rule sufficient to justify its decision." *Prihoda v. McCaughtry*, 910 F.2d 1379, 1382 (7th Cir. 1990).  A state ground is considered "adequate" only if the state court applies the rule "in a consistent and principled way."  *Id.* at 1383.  The adequacy of the state ground is a question of federal law.  *Lee v. Kemna*, 534 U.S. 362, 375 (2002).

If a petitioner has procedurally defaulted a claim, a federal court cannot reach the merits of that claim unless the petitioner demonstrates (1) cause for the default and actual prejudice from failing to raise the claim as required, or (2) that enforcing the default would lead to a "fundamental miscarriage of justice." *Steward v. Gilmore*, 80 F .3d 1205, 1211-12 (7th Cir. 1996) (quoting *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)).  To meet the "cause" requirement, there

8

must have been some external impediment that prevented petitioner from raising the claim. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). A fundamental miscarriage of justice is established by demonstrating that it is more likely than not that no reasonable juror would have convicted petitioner in light of any new evidence. *Schlup v. Delo*, 513 U.S. 298, 327 (1990).

The state contends that petitioner has properly preserved for federal review only the following claims: 1) his lawyer's failure to address his vision and hearing impairments; 2) his lawyer's failure to provide him with correct information about the maximum term of imprisonment he faced in Wisconsin; and 3) his lawyer's failure to provide him with accurate information about his Louisiana parole. Petitioner procedurally defaulted his remaining claims, the state argues, because the state court of appeals relied on an independent and adequate state ground when it found that the claims were "inconsequential and not fully developed." The state's assertion of state court procedural default rests on the court's second finding, that is, that the claims were "not fully developed." At the time petitioner submitted his briefs, Wisconsin had a firmly established and regularly applied rule requiring appellants to develop their claims fully on appeal. *See, e.g., State v. Pozo*, 2002 WI App 279, ¶ 11, 258 Wis. 2d 796, 654 N.W. 2d 12; *State v. Arredondo*, 2004 WI App 7, ¶ 22, 269 Wis. 2d 369, 674 N.W. 2d 647; *State v. Flynn*, 190 Wis. 2d 31, 527 N.W. 2d 343, 346 (Ct. App. 1994); *State v. Pettit*, 171 Wis. 2d 627, 492 N.W. 2d 633, 642 (Ct. App. 1992).

However, the independent and adequate state rule will bar federal review only if the last state court to which the petitioner presented his claims "clearly and expressly" relied on a state procedural rule as its reason for rejecting the claims. *Harris v. Reed*, 489 U.S. 255, 263 (1989). "Thus, if the state-court decision appears to rest primarily on a merits determination of the

petitioner's claims, or to be interwoven with those claims, and does not clearly and expressly rely on the procedural default, there is no independent and adequate state ground." *Farmer v. Litscher*, 303 F.3d 840, 846 (7th Cir. 2002).  In this case, the state court of appeals did not "clearly and expressly" rely on a state procedural rule to reject petitioner's claims.  Its finding that the claims were "not fully developed" appears to be interwoven with its conclusion that the claims were "inconsequential," a finding that implies that the court reviewed the merits of petitioner's remaining claims at least cursorily.  Lending support for this conclusion is the court's citation to *County of Fond du Lac v. Derksen*, 2002 WI app 160, ¶4, 256 Wis. 2d 490, 647 N.W. 2d 922, which it cited *not* for the proposition that arguments not developed fully on appeal are waived, but rather to explain that the court was authorized to "decline to consider issues 'that lack sufficient merit or importance to warrant individual attention.'"   2006AP618-CR at 4. Accordingly, because the state appellate court appears to have determined that petitioner's claims had no merit and did not clearly and expressly rely on a procedural rule, petitioner has not procedurally defaulted his claims.

## B.  <u>Merits</u>

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, federal courts may grant a state prisoner habeas relief only if the state court's adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The relevant state court decision is that of the last state court to address the habeas petitioner's arguments on the merits, *Garth v. Davis*, 470 F.3d 702, 710 (7th Cir. 2006), which in this case is the decision of the Wisconsin Court of Appeals.

To grant habeas relief under the "contrary to" clause, a federal court must find that the state court reached a result opposite to that reached by the Supreme Court on materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *Jackson v. Miller*, 260 F.3d 769, 774 (7th Cir. 2001). To obtain relief under the "unreasonable application" clause, a habeas petitioner must show that the state court's decision unreasonably extended a clearly established Supreme Court precedent to a context where it should not have applied or unreasonably refused to extend such precedent to a context where it should have applied. *Jackson*, 260 F.3d at 774. The state court's factual findings are presumed correct unless the petitioner comes forth with clear and convincing evidence showing that the findings were wrong. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 348 (2003).

To be valid, a plea must be voluntary and a "knowing intelligent act[] done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). Whether a plea is voluntary depends upon "all of the relevant circumstances surrounding it." *Id*. at 749. When a defendant alleges that he entered his plea in reliance upon his lawyer's alleged misrepresentations or errors, he must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

I address petitioner's claims against this legal backdrop.

11

1.  Counsel's Failure to Address Petitioner's Alleged Hearing and Vision Impairments

Petitioner asserts that his lawyer was ineffective for allowing petitioner to enter a plea without wearing his glasses or hearing aid.  He states that Fiske knew from petitioner's Louisiana prison medical records that petitioner is "legally blind and deaf."  Petitioner asserts in his brief that because of these problems, he was unable to fully understand the constitutional rights he was waiving or the terms of the plea agreement.

The state appellate court rejected this claim, finding that petitioner had "not adequately explain[ed] how these purported [hearing and vision] problems affected his ability to hear and understand the proceedings."    *Evans* at 3. Although the court did not cite *Hill* or its predecessor, *Strickland v. Washington*, 466 U.S. 668 (1984), it appears to have determined that petitioner had not satisfied *Strickland*'s second prong, that is, that he had not shown how Fiske's alleged failure had made any difference to the outcome of the plea hearing.

This conclusion was not unreasonable.  In his appellate brief, petitioner did not point to any specific portion of the plea hearing that he did not hear or understand or to anything in the transcript that supported his unsworn, conclusory assertion that he did not fully understand the proceedings.  He did not allege that he told the court or his lawyer that he could not hear what they were saying and nothing from the transcript suggests that he had any problems hearing what was being said to him.  Indeed, petitioner has described in some detail the alleged conversations that he had with his lawyer in the courtroom before the hearing.  Further, as the state appellate court noted, the trial court, which had had the opportunity to observe petitioner, saw nothing to indicate that petitioner could not hear or understand the proceedings; to the contrary, it made a special point of noting that petitioner *did* understand what he was doing.

12

All of this evidence supports the court's conclusion that, notwithstanding petitioner's alleged hearing and vision deficits, he was able to see and hear the proceedings adequately and to enter a voluntary and informed plea.

2. <u>Counsel's Alleged Misinformation to Petitioner Concerning the Term of his Sentence</u>

The court of appeals found that the record "unequivocally" refuted petitioner's claim that he understood that he would be sentenced to no more than seven years' total confinement under the terms of the plea agreement.  As the appellate court noted, the terms of the plea agreement were stated twice at the plea hearing, once by the prosecutor and a second time by the court. When asked if he understood the agreement, petitioner stated that he did.

Because the point of a plea colloquy is to ensure that a defendant is entering his plea knowingly and voluntarily, the defendant's answers to the questions posed to him during that colloquy are presumed to be true and "control his fate." *United States v. Ellison*, 835 F.2d 687, 693 (7th Cir. 1987).  A defendant who later gives reasons for withdrawing his plea that contradict the answers he gave at the plea hearing "faces an uphill battle" in showing a that a fair and just reason exists for withdrawing the plea. *United States v. Trussel*, 961 F.2d 685, 691 (7th Cir. 1992).

Petitioner argues that the transcript of the plea hearing in his case is unreliable because the trial court did not conduct a thorough plea colloquy.  Mem. in Supp. of Petition, dkt. 1, at 29.  He points out that the court never stated that it was not bound by the terms of the plea agreement, described the elements of the offense, asked him if he was satisfied with his lawyer's performance, asked him about his educational background, asked him whether he was taking any

medications or if he had been threatened or coerced into pleading no contest.  *See State v. Bangert*, 131 Wis. 2d 246, 261-262, 389 N.W. 2d 12 (1986) (describing trial court's duties before accepting plea).  However, petitioner has made no attempt to show how any of these omissions affected his decision to plead no contest or undermined the reliability of his other statements.  The voluntariness of a plea does not depend on the trial court's perfect compliance with plea hearing procedures but "can be determined only by considering all of the relevant circumstances surrounding it." *Brady v. United States*, 397 U.S. 742, 749 (1970) (citations omitted).  My review of the record leads to the conclusion that the Wisconsin Court of Appeals reasonably concluded that petitioner had not met his heavy burden to show that he should not be bound by his responses at the plea hearing, which demonstrate that he understood that he was being sentenced to a term of seven years' confinement followed by 13 years' extended supervision.

3.  Counsel's alleged misinformation concerning petitioner's Louisiana parole

        Petitioner alleges that Fiske told him that if he pleaded no contest, he would be allowed to serve the time he had remaining on his Louisiana sentence concurrently with the Wisconsin sentence.  At the postconviction motion hearing, Fiske denied having provided petitioner with any advice about his Louisiana sentence.  The state appellate court, deferring to the trial court's credibility finding, accepted Fiske's testimony over petitioner's.  This is a factual finding to which this court must defer unless petitioner comes forth with "clear and convincing evidence" showing that the state court determination was erroneous.  *Hinton v. Uchtman*, 395 F. 3d 810, 819 (7th Cir. 2005); *Ward v. Sternes*, 334 F.3d 696, 703-04 (7th Cir. 2003).  Petitioner has no

such evidence.  The evidence he presents to support his claim consists of the same allegations that the state courts rejected as incredible.  Accordingly, this court has no basis to disturb the state court's determination that Fiske did not misinform petitioner about his Louisiana sentence.

4.  Remaining Claims

Like the state appellate court, I find petitioner's remaining claims to be inconsequential. He contends that Fiske was ineffective for failing to review the waiver of rights form with petitioner before petitioner signed it and for failing to ensure that the trial court's colloquy with petitioner satisfied all of the requirements of *Bangert*.  In addition, he alleges that Fiske was ineffective for failing to challenge the victim's in-court identification of petitioner; informing petitioner that he could appeal "all evidentiary issues" if he entered a plea; advising petitioner to enter a plea before the court had ruled on petitioner's various *pro se* motions; failing to "re-urge an invalid competency evaluation;" and failing to ensure  that certain traffic offenses for which petitioner was charged on April 1, 2003 were dismissed pursuant to the plea agreement. All of these claims suffer from the same glaring omission:  petitioner does not make any attempt to show that the outcome of his case would have been different if Fiske had not committed these alleged errors.  To show that he received the ineffective assistance of counsel, a defendant must show *both* that his lawyer's performance was deficient *and* that the deficient performance prejudiced him.  *Strickland*, 466 U.S. at 687.  Because petitioner made no attempt to meet the prejudice prong of *Strickland*, the Wisconsin Court of Appeals did not unreasonably apply clearly established federal law when it summarily dismissed these claims.

15

RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1)(B), I respectfully recommend that the petition of

Eddie Gene Evans for a writ of habeas corpus be DENIED.

Entered this 22nd day of November, 2008.

BY THE COURT:

/s/

_____
STEPHEN L. CROCKER
Magistrate Judge

16

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN
120 N. Henry Street, Rm. 540
Post Office Box 591
Madison, Wisconsin  53701

Chambers of                                                                                    Telephone
STEPHEN L. CROCKER                                                               (608) 264-5153
U.S. Magistrate Judge

November 24, 2008

Eddie Gene Evans #85653
Waupun Correctional Institution
P.O. Box 351
Waupun, WI 53963-0351

Rebecca Rapp St. John
Wisconsin Department of Justice
P.O. Box 7857
Madison, WI 53707-7857

Re:___Evans v. Thurmer; 08-cv-360-slc

Dear Counsel:

        The attached Report and Recommendation has been filed with the court by the
United States Magistrate Judge.

        The court will delay consideration of the Report in order to give the parties an
opportunity to comment on the magistrate judge's recommendations.

        In accordance with the provisions set forth in the memorandum of the Clerk of Court
for this district which is also enclosed, objections to any portion of the report may be raised
by either party on or before December 12, 2008, by filing a memorandum with the court
with a copy to opposing counsel.

        If no memorandum is received by December 12, 2008, the court will proceed to
consider the magistrate judge's Report and Recommendation.

                                        Sincerely,

                                        /s/
                                        Melissa Hardin
                                        Secretary to Magistrate Judge Crocker

Enclosures

cc:     Honorable Barbara B. Crabb, District Judge

17

MEMORANDUM REGARDING REPORTS AND RECOMMENDATIONS

Pursuant to 28 U.S.C. § 636(b), the district judges of this court have designated the full-time magistrate judge to submit to them proposed findings of fact and recommendations for disposition by the district judges of motions seeking:

(1) injunctive relief;

(2) judgment on the pleadings;

(3) summary judgment;

(4) to dismiss or quash an indictment or information;

(5) to suppress evidence in a criminal case;

(6) to dismiss or to permit maintenance of a class action;

(7) to dismiss for failure to state a claim upon which relief can be granted;

(8) to dismiss actions involuntarily; and

(9) applications for post-trial relief made by individuals convicted of criminal offenses.

Pursuant to § 636(b)(1)(B) and (C), the magistrate judge will conduct any necessary hearings and will file and serve a report and recommendation setting forth his proposed findings of fact and recommended disposition of each motion.

Any party may object to the magistrate judge's findings of fact and recommended disposition by filing and serving written objections not later than the date specified by the court in the report and recommendation. Any written objection must identify specifically all proposed findings of fact and all proposed conclusions of law to which the party objects and must set forth

with particularity the bases for these objections.  An objecting party shall serve and file a copy of the transcript of those portions of any evidentiary hearing relevant to the proposed findings or conclusions to which that party is objection.  Upon a party's showing of good cause, the district judge or magistrate judge may extend the deadline for filing and serving objections.

After the time to object has passed, the clerk of court shall transmit to the district judge the magistrate judge's report and recommendation along with any objections to it.

The district judge shall review de novo those portions the report and recommendation to which a party objects.  The district judge, in his or her discretion, may review portions of the report and recommendation to which there is no objection.  The district judge may accept, reject or modify, in whole or in part, the magistrate judge's proposed findings and conclusions.  The district judge, in his or her discretion, may conduct a hearing, receive additional evidence, recall witnesses, recommit the matter to the magistrate judge, or make a determination based on the record developed before the magistrate judge.

**NOTE WELL: A party's failure to file timely, specific objections to the magistrate's proposed findings of fact and conclusions of law constitutes waiver of that party's right to appeal to the United States Court of Appeals.  *See United States v. Hall,* 462 F.3d 684, 688 (7th Cir. 2006).**

19